IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS DISTRICT LOCAL LODGE 1776, et al | : CIVIL ACTION : : : : |
| v. | : : : |
| DARREL JACKSON, et al | : No. 09-150 |

Goldberg, J.  February 19, 2010

## MEMORANDUM OPINION

This case raises the question as to whether a Complaint setting forth purported civil RICO violations is precluded by the Railway Labor Act, 45 U.S.C. § 151 et seq, where the ultimate harm complained of is governed by a collective bargaining agreement.

The allegations levied stem from the 2005 merger between U.S. Air and America West, and the myriad of conflicts that subsequently arose regarding union representation of the merged companies. One of these conflicts involves the civil RICO action before the Court, brought by Plaintiffs, the International Association of Machinists and Aerospace Workers, District Local Lodge 1776 ("Local 1776") and several of its members, against Defendants, the Transport Workers Union of America, AFL-CIO ("TWU") and employees at U.S. Airways Group, Inc.

Currently at issue are Defendants' two motions to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction and for failure to state a claim. For the reasons set forth below, I find that subject matter jurisdiction is lacking because Plaintiffs' claims are precluded by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq. Consequently, Plaintiffs' Complaint will be dismissed.

1

# I. THE COMPLAINT

On January 12, 2009, Plaintiffs, Local 1776, Robert Boland, the President of Local 1776, and other individual Plaintiffs[1] brought suit against the TWU and US Air employees Darrel Jackson, Allen Hemenway, Ron Harbinson, George Raymond, and Rick Davis[2] (collectively referred to as the "Individual Defendants"). The Complaint alleges the following:

Beginning in late 2004, during a merger between US Air and America West Holdings Corporation, the TWU and Individual Defendants conspired to replace Local 1776. The individual Defendants targeted Local 1776 because it "accounted for approximately 48% of the total IAM and TWU membership employed by US Air." The Individual Defendants favored the TWU because it was more amenable to the desires of management. Ultimately, the TWU sought to have a vote under the National Railway Act to determine which union would represent the employees of the merged airlines. (Complaint, ¶¶ 9-12).

The Complaint further claims that the Defendants carried out this conspiracy by engaging in a pattern of racketeering, involving extortion and influencing witnesses in violation of federal law. Specifically, the Complaint states that in 2005 the Individual Defendants and TWU agreed to have TWU organizers travel to the Philadelphia airport and solicit Local 1776 members. The TWU began its solicitation in Philadelphia and conducted similar solicitation meetings over the next couple of months throughout the country. (Complaint, ¶¶ 14, 15).

On February 8, 2006, the TWU hosted a meeting in Philadelphia, wherein TWU organizers

---

[1] The other individual Plaintiffs are Wayne Gallagher, Jason McGuigan, John Doran, Edward Longwell, Vincent Ceraso, David Messer, James Strouse, and Richard Howell.

[2] The Individual Defendants held the following positions at US Air: Darrel Jackson - Assistant General Corporate Counsel; Allen Hemenway - Senior Vice President; Ron Harbinson - Director of Labor Relations; George Raymond - Human Resources Manager; and Rick Davis - Manager of Operations.

initiated a physical altercation with the Local 1776 members. Within minutes of the altercation, the TWU organizers allegedly contacted the Individual Defendants who then, "in the name of US Air," attempted to interrogate various Local 1776 members. After repeated unsuccessful attempts to interrogate Local 1776 members, Plaintiffs Boland and Ceraso, and other Local 1776 members, were terminated "in violation of their contracts." (Complaint, ¶¶ 12-16).

The Complaint further alleges that the Individual Defendants and the TWU then attempted to influence the criminal proceedings that stemmed from the February 8, 2006 altercation. Specifically, the Complaint avers that: the Individual Defendants convinced the Philadelphia District Attorney to bring criminal charges; Defendant Jackson met with the TWU organizers to discuss their testimony regarding the incident; and, the Individual Defendants influenced testimony given at probable cause hearings in the Philadelphia Court of Common Pleas. Despite this alleged tampering by Individual Defendants, the charges against the individual Plaintiffs were dismissed. (Complaint, ¶¶ 18-22).

Finally, the Complaint alleges that in March 2007, the Philadelphia District Attorney's Office reinstated charges against Boland, and that he subsequently entered a plea to the charges of conspiracy and simple assault. The remaining individual Plaintiffs pled nolo contendere[3] and the Individual Defendants used these pleas to prevent Plaintiffs from regaining employment with US Air. (Complaint, ¶¶ 24, 25).

Count 1 of the Complaint alleged a RICO claim against the Individual Defendants under 18 U.S.C. § 1962(c), predicated on extortion, in violation of 18 U.S.C. § 1951(b)(2), and obstruction

---

[3] Defendants claim that Plaintiffs actually pled guilty, however the distinction is not relevant here. (See Arbitrator's Opinion, p. 135).

of justice, in violation of 18 U.S.C. § 1512(b)(1) and § 1512(c)(2); Count II alleges a RICO conspiracy under 18 U.S.C. § 1962(d) against both the Individual Defendants and the TWU. On February 20, 2009, the TWU filed their Motion to Dismiss under 12(b)(6) and the Individual Defendants subsequently filed their Motion to Dismiss under 12(b)(6) and 12(b)(1) on March 6, 2009.

## II. DISCUSSION

In their Motion to Dismiss, the Individual Defendants raise three arguments: 1) that Plaintiffs' Complaint fails to state a RICO claim; 2) that this Court lacks subject matter jurisdiction because the claims are a minor dispute precluded by the RLA; and 3) that this Court lacks subject matter jurisdiction because the claims are a representation dispute preempted by the RLA. The TWU also argues that the Complaint fails to state a RICO claim. Because the question of whether Plaintiffs have adequately stated a RICO claim cannot be reached unless this Court has subject matter jurisdiction over such claims, I will first address the Individual Defendants' argument that the claims are preempted by the RLA.

### A. Standard of Review

Under Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. The burden of persuasion in proving the subject matter jurisdiction of a court lies with the plaintiff. United Transp. Union v. Se. Pa. Transp. Auth., 23 F.Supp. 2d 557, 558 (E.D. Pa. 1998) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)). Unlike a 12(b)(6) motion to dismiss, a court does not have to presume that the plaintiff's allegations on subject matter jurisdiction are true and is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir.

4

1977).

**B. The Railway Labor Act**

The Railway Labor Act ("RLA") was enacted by Congress in 1926 to provide "a comprehensive framework for the resolution of labor disputes in the railroad industry." Atchinson, Topeka and Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 562-563 (1987). In 1936, the RLA was amended to cover the airline industry. Independent Ass'n. of Continental Pilots v. Continental Airlines, 155 F.3d 685, 689 (3d Cir. 1998) (citing Act of April 10, 1936, ch. 166, 49 Stat. 1189). The general purpose of the legislation is "to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a(5). To this end, the RLA "directs air carriers and their unions to establish arbitral tribunals . . . for the resolution of 'disputes between an employee or group of employees and a carrier or carriers by air.'" Independent Ass'n. of Continental Pilots, 155 F.3d at 690 (citing 45 U.S.C. § 184).

The RLA governs three different types of disputes: "representation disputes," "major disputes," and "minor disputes." A "representation dispute" deals with "the selection of collective-bargaining representatives." Id. at 690. This type of dispute is under the exclusive jurisdiction of the RLA. Id. at n.3. A "[major dispute] relates to disputes over the formulation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy." Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 723 (1945).

"A minor dispute is a dispute over the interpretation or application of existing collective bargaining agreements." United Transp. Union v. Conemaugh & Black Lick R.R. Co., 894 F.2d 623,

5

628 (3d Cir. 1990). A claim is a minor dispute if it, "implicate[s] practices, procedures, implied authority, or codes of conduct that are part of the working relationship." Fry v. Airline Pilots Ass'n., Intern., 88 F.3d 831, 836 (10th Cir. 1996).

Importantly, and for purposes of the motion before this Court, minor disputes must be kept out of the courts and under the exclusive jurisdiction of an arbitration board. See Independent Ass'n. of Continental Pilots, 155 F.3d at 691 (citing Union Pacific R.R. Co. v. Sheehan, 439 U.S. 89, 94 (1978)). When a claim is "inextricably intertwined" or "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," the claim is preempted.[4] Wall v. Americold Corp., 1997 WL 431006, at *2 (E.D. Pa. July 15, 1997) (citing Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 & 220 (1985)).[5]

In order to ascertain whether the resolution of a claim depends on the meaning of the CBA, the court should analyze the elements of the claim in order to see if those elements would require the interpretation of the CBA. Id. (citing Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 (1988)). In doing so, "federal courts [should] look beyond the allegations of the complaint ... to determine whether the wrong complained of actually arises in some manner from a breach of the defendants' obligations under a collective bargaining agreement." Fry, 88 F.3d at 836 (citing Mock v. T.G. & Y. Stores Co., 971 F.2d 522, 530 (10th Cir. 1992)).

---

[4] The term "preclusion" appears to apply to federal claims, while the term "preemption" is more appropriate to state claims. Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 259 n.6 (1994). Courts, however, have used these terms interchangeably. See Fry v. Airline Pilots Ass'n., Intern., 88 F.3d 831 (10th Cir. 1996).

[5] Wall dealt with preemption of a state claim under § 301 of the Labor Management Relations Act ("LMRA") rather than under the RLA. However, the Supreme Court has held that the standard adopted for preemption under the LMRA is applicable to preemption analysis under the RLA. Norris, 512 U.S. at 263.

Here, although the Complaint recites an alleged plot to oust or "bust" Local 1776, when read in its entirety, the ultimate harm complained of pertains to the alleged wrongful suspension/termination of the individual Plaintiffs. For instance, the Complaint claims that the Individual Defendants and the TWU conspired to instigate an altercation with members of the Local 1776 and then used this altercation to <u>terminate the individual Plaintiffs, "in violation of their contracts.</u>" (emphasis added). (Complaint, ¶¶ 4-16). The Complaint goes on to note that Plaintiffs were "suspended from their jobs" and concludes that, "[t]he plaintiffs pleas of nolo contendere have been used against them in their efforts to regain their jobs and find other gainful employment." (Complaint, ¶ 25). Thus, while the Complaint recites RICO claims, looking beyond these allegations, I conclude that the "wrong complained of" is the alleged improper employment suspension/termination.[6]

Examination of the CBA reflects that these claims are "inextricably intertwined" and/or "substantially dependent upon analysis" of the CBA. First, Article 3 of the CBA, which speaks to the "scope" of the agreement, notes that the employer has "sole jurisdiction" over employment matters, including the "discipline and discharge" of employees. The agreement states:

> The Union recognizes that the Company shall have sole jurisdiction, subject to the terms of this agreement, over the management and operation of its business, the direction of its working force, the right to establish rules and regulations, to maintain efficiency in its place of employment, and the right of the Company to hire, promote, demote, select for training, <u>discipline, and discharge employees</u>. It is agreed that the

---

[6] It should be noted that the issue of whether Plaintiffs were unjustly disciplined and/or terminated was previously litigated in an arbitration hearing pursuant to the CBA. Arbitrator Alexander Cohn issued an extensive opinion on the matter on October 25, 2008, and found that US Air had just cause to terminate Boland, Gallagher, McGuigan, Ceraso and Strouse. With regards to Doran, Longwell, Messer and Howell, Arbitrator Cohn found that there was not just cause to terminate, however he found that they were not entitled to back pay or benefits due to their insubordination for failure to cooperate with the US Air investigation. (Arbitrator Opinion, pp. 137-146).

7

rights listed here shall not be deemed to exclude other pre-existing rights of management not listed which do not conflict with other provisions of this agreement. (emphasis added).

(CBA, Article 3(F)).

Article 7(E) also implicates issues regarding discharge as follows:

Any employee covered by this agreement will lose his seniority status and his name shall be removed from the seniority list under the following conditions: . . .

    2. He is <u>discharged</u> for just cause . . . .

(CBA, Article 7(E)) (emphasis added). Finally, Article 20(E) details Grievance Procedure in "cases of discharge."[7]

Consequently, upon review of the CBA, I find that Plaintiffs have raised a minor dispute claiming wrongful termination/suspension that "in some manner" arises from or implicates the CBA.

An examination of the Company Rules of Conduct further supports this conclusion.[8] Certain sections of these rules forbid insubordination, conduct that is unfavorable to US Air's interest, a conviction or guilty plea for any felony or serious misdemeanor, and the failure to cooperate in a company investigation. (See Arbitrator's Opinion, p. 5). These provisions are relevant to analyzing the claims raised in the Complaint, which includes facts regarding a physical altercation, cooperation in the ensuing investigation and convictions for assault. (Complaint, ¶¶ 15-16, 25). Thus, because Plaintiffs' claims also implicate several provisions of the Rules of Conduct, these provisions would also have to be examined in assessing the Individual Defendants' duties and obligations under the CBA.

---

    [7]See also Article 20(C), which concerns the issuance of discipline.

    [8]In a telephone conference with counsel held on February 3, 2010 regarding Defendants' motion, Plaintiffs' counsel agreed that the Rules of Conduct should be examined in conjunction with the CBA.

8

To the extent that the Complaint could be read as focusing less upon employment suspension/discharge issues and more upon a conspiracy to replace the Local 1776 and its individual members, the CBA is, nonetheless, implicated. Articles 1(B) and 20(J) of the CBA state:

> No employee covered by this Agreement will be interfered with, restrained, coerced, or discriminated against by [US Air], its officers or agents, because of membership in or lawful activity on behalf of the Union.
>
> . . .
>
> No employee selected as committeeman or officer of the Union will be discriminated against for lawful activity on behalf of the Union.

(CBA, Articles 1(B) and 20(J)).

Thus, those sections of the Complaint that focus on Defendants' conspiracy to extort the individual Plaintiffs because they were members of the Local 1776, are also governed by the CBA, which prohibits US Air from engaging in such conduct because of Plaintiffs' affiliation with the union.

Several courts have held that RICO claims are preempted by the RLA. In Fry v. Airline Pilots Ass'n, Intern., 88 F.3d 831 (10th Cir. 1996), the Tenth Circuit addressed whether RICO claims can be minor disputes precluded by the RLA. In Fry, airline pilots declared a strike against the airline, during which the airline sought replacement pilots, and encouraged union pilots to cross the picket line. Eventually, the airline and union negotiated a Back-to-Work Agreement, which prohibited recriminations on either side. Nonetheless, it was alleged that the union began harassing the pilots who had crossed the picket line, and further alleged that the airline acquiesced to this harassment. Id. at 834. The plaintiff pilots raised several claims against the union and airline, including civil RICO violations, based on post-strike harassment. Id. at 834 & n.3. In examining

9

the complaint, the Tenth Circuit recognized that plaintiffs will often try to avoid preemption by framing complaints under diverse state law theories, such as wrongful termination and conspiracy. Id. at 836 (quoting Mock, 971 F.2d at 530). The Tenth Circuit instructed that federal courts should look beyond the complaint's allegations in order to ascertain "whether the wrong complained of actually arises in some manner from a breach of the defendants' obligations under a collective bargaining agreement." Id. In examining the allegations raised in the complaint, the Tenth Circuit concluded that the duties allegedly violated by the defendants could not be determined without reference to the agreement in place and in fact were inextricably bound with the agreements between the parties. Consequently, the Court held that the pilots RICO claims were a minor dispute preempted by the RLA. Id. at 836-837.[9]

Like the Court in Fry, I find that the wrongs complained of in Plaintiffs' Complaint arise from the parties' rights and obligations under the CBA. These include suspension and discharge issues, the Individual Defendants' duty not to discriminate against IAM members and the disciplinary process.

In their Memorandum of Law in opposition to Defendants' motion, Plaintiffs do not directly address or focus on provisions of the CBA. Rather, Plaintiffs urge that they are trying to vindicate rights independent of the CBA. In support of their position, Plaintiffs rely upon Brown v. Trans

---

[9]Other Circuits have also addressed RLA preclusion of RICO claims. See Underwood v. Venango River Corp., 995 F.2d 677, 685-86 (7th Cir. 1993) (holding that plaintiff's RICO claims were preempted under the RLA but also finding that preemption is broader under the RLA than under § 301, a finding which has since been overruled by the Supreme Court in Norris, 512 U.S. at 263); Hubbard v. United Airlines, Inc., 927 F.2d 1094, 1097 (9th Cir. 1991) (likewise holding that plaintiff's RICO claims were preempted under the RLA under an incorrect preemption standard but also stating that the RICO claims would be preempted "[e]ven if preemption under [§ 301] provided a proper analogy"); see also Beidleman v. Stroh Brewery Co., 1998 WL 254979, at *5 (E.D. Pa. April 17, 1998) (dismissing a civil conspiracy claim because plaintiff's claim was "inextricably intertwined with" and "substantially dependent upon" an assessment of the collective bargaining agreement).

World Airlines, 127 F.3d 337 (4th Cir. 1997) and Benson v. Northwest Airlines, Inc., 62 F.3d 1108 (8th Cir. 1995). Both cases generally stand for the proposition that a suit to enforce a federal statutory right, such as the ADA or Title VII, as opposed to a contractual right embodied in the CBA, are not preempted by the RLA.

In Brown, the plaintiff raised claims for sexual harassment and retaliation under Title VII of the Civil Rights Act, which the District Court found were controlled by the collective bargaining agreement. The Fourth Circuit disagreed, finding that the language of the agreement was drafted narrowly so as not to include resolution of plaintiff's civil rights claims through arbitration. In so holding however, the Court stressed and specifically noted that while the CBA did prohibit discrimination, it did not prohibit the type of Title VII retaliation alleged in plaintiff's complaint. Brown, 127 F.3d at 342. Brown is thus different than the case before this Court in that here, the CBA broadly includes the disciplinary and termination claims specifically raised in the Complaint.

In Benson, the plaintiff raised claims under the American Disabilities Act, which the District Court dismissed. This dismissal was not based upon preemption principles but was due to plaintiff's failure to meet the requisite burdens of proof regarding whether he was a qualified individual with a disability. Benson, 62 F.3d at 1111. The Eighth Circuit disagreed, premising its ruling primarily upon the fact that material issues of fact existed regarding whether a reasonable accommodation for the disability was possible. Id. at 1112. As it relates to the preemption issue before this Court, the Eighth Circuit briefly considered this issue without an in depth analysis and generally noted that plaintiff sought to enforce a federal statutory right, not a contractual right, and that the ADA "provides a more extensive and broader ground for relief." Id. at 1115. Therefore, the Eighth Circuit held that the claim was not preempted.

In short, the cases relied upon by Plaintiffs are distinguishable because, while the Complaint here may be dressed up as a RICO suit, the wrong that Plaintiffs seek to redress is an alleged conspiracy to wrongfully have them suspended and/or terminated, which directly implicates the CBA. In contrast, the wrongs complained of in Brown and Benson, were outside the scope of the CBA.

Finally, although certain allegations in the Complaint revolve around the dispute between IAM and TWU to represent employees after the US Air and America West merger, and could constitute a representation dispute, (see e.g., Complaint ¶¶ 9, 11-14), these allegations serve primarily as background information. The actual claims at issue here do not involve the selection of a collective bargaining representative, but implicate the CBA and focus on alleged wrongful suspension/termination and claims that Defendants conspired to remove the Local 1776 from its position by inciting a brawl, instigating criminal convictions and employment terminations. Therefore, I also find that Plaintiffs' Complaint is not a representation dispute.

### C. Claims Against the TWU

As I agree with the Individual Defendants and dismiss Plaintiffs' claims against them in Counts I and II because of a lack of subject matter jurisdiction, the conspiracy claim against the TWU must also be dismissed. See Contawe v. Crescent Heights of Am., Inc., 2004 WL 2244538, at *2 (E.D. Pa. Oct. 1, 2004) (dismissing a 1962(d) RICO conspiracy claim where plaintiffs failed to state a claim under 1962(c)).

### D. Legal Sufficiency of the RICO Claims

Even if Plaintiffs' claims were not precluded by the RLA, Plaintiffs have failed to properly state a RICO claim. When determining whether a plaintiff has properly stated a claim upon which

12

relief can be granted, a court must dismiss a complaint that does not allege enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). To state a RICO claim, a plaintiff must allege: (1) an enterprise affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated in the conduct of the affairs of the enterprise; and (4) that the defendant's participation involved a pattern of at least two criminal acts of racketeering, known as predicate acts. Kalomiris v. Monroe County Syndicate, 2009 WL 73785, at *5 (M.D. Pa. Jan. 8, 2009).

Here, Plaintiffs have not properly alleged the predicate act of extortion. Extortion is defined as the "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, under color of official right." 18 U.S.C. § 1951(b)(2). While intangible property such as labor positions can be the basis of extortion, see U.S. v. Gotti, 459 F.3d 296 (2d Cir. 2006), the complaint does not allege that the Individual Defendants obtained Plaintiffs' jobs. Therefore, the predicate of extortion has not been properly alleged. See Scheidler v. Nat'l Org. for Women, Inc., 537 U.S. 393, 405 (2003) (holding that "acts did not constitute extortion because petitioners did not 'obtain' respondents' property").

Furthermore, Plaintiffs' Complaint fails to include allegations that implicate the Individual Defendants for the predicate act of obstruction of justice. According to paragraph 18 of the Complaint, Defendant Jackson met with the TWU organizers that were involved in the February 8, 2006 altercation, showed pictures of the Local 1776 members who were fired, told the organizers that certain Local 1776 members were responsible for the altercation, and "took further actions which influenced statements and subsequent testimony given." (Complaint, ¶ 18). Plaintiffs go on to allege that the Individual Defendants "corruptly influenced the testimony given during [probable

13

cause hearings in the Philadelphia County Court of Common Pleas]." (Complaint, ¶ 21). No other allegations against the Individual Defendants implicate § 1512(b)(1) and § 1512(c)(2).[10] These predicate sections require any intimidation, threats or corruption, or obstruction of testimony to be related to an official proceeding, which includes any proceeding before the federal courts, Congress, or federal government agency. 18 U.S.C. § 1515(a)(1). Therefore, any alleged obstruction of justice that took place regarding the probable cause hearings in the Philadelphia Court of Common Pleas would not apply, and Plaintiffs have failed to properly allege the predicate of obstruction of justice.

Because Plaintiffs failed to adequately state a RICO claim in Count I, Count II would also fail.

## III. **CONCLUSION**

For the foregoing reasons, Plaintiffs' claims shall be dismissed. Our Order follows.

---

[10]Only the Individual Defendants are named in Count I, therefore any allegations attributed to the TWU cannot provide a basis for the obstruction predicate. (See Complaint, ¶¶ 19 and 23).

14